Mr. Pendleton faces an unlawfully coercive choice between adequate nutrition and his religious objection to eating meat and soy. Defendants primarily respond by contending that Mr. Pendleton could and should seek soy allergy testing. That is unsupportable for two reasons. First, Mr. Pendleton is not required to pass a medical test of the government's choosing in order to prove the validity of his religious belief that soy is an impure food. Second, defendants have never offered to test him for a soy allergy, despite his repeated requests for a no-soy medical diet and frequent medical treatment for severe soy-related gastrointestinal issues. Because the defendants launched this sideways attack on the sincerity of Mr. Pendleton's religious belief on a motion to dismiss, I'd like to begin by focusing on the comprehensive nature of the allegations in the complaint that plausibly allege that Mr. Pendleton has a sincere religious objection to both eating meat and to eating soy. Dating back as early as 2014, Mr. Pendleton explained to prison officials that he was religiously forbidden from eating meat and soy products because they were inconsistent with his religious dietary practice that is focused on purifying his body. He explained in that accommodation request, which is at JA40, that soy causes him discomfort when he eats it, and there's documentation of that in the record, and is therefore inconsistent with dietary tenets that relate to purifying his body and thus make soy haram. Mr. Pendleton has thus alleged a sincere religious objection to eating soy, whether or not his reaction to soy happens to meet some diagnostic criteria or some medical threshold of the defendant's choosing. But it is, can I just make sure, his objections to soy and to meat are somewhat different, right? His objection to meat is, I cannot eat meat, and the answer is, why? I can't eat meat because I can't eat meat. That's the nature of his religious objection to meat, right? Because of a religious belief that his diet shouldn't purify his body, so both relate back to that religion. Sure. But it's just that the soy one is a little bit more complicated, right? It's not, I can't eat soy because my religious tenets say I can't eat soy directly. It's that I can't eat soy because soy makes me experience certain symptoms, and my religious tenets forbid me from eating something that gives me those certain... It seems like his objection to meat is like a straight-line, one-level objection, and his soy objection is like a two-level objection? In one sense, yes, Your Honor. The way that I would think about it, perhaps, is that it may be that everyone who shares Mr. Pendleton's same religious beliefs can't eat meat, and that everyone has a religious belief that foods that cause them gastrointestinal distress, they can't eat those either, again, because they're not consistent with purifying the body. That's another way to say it. He would say, everyone of my religion can't eat meat. Right. Some people of my religion could eat soy, I'm just not one of the people who could eat soy because of my religion. That's correct, Your Honor. And the Supreme Court in Holt v. Hobbs has made very clear that the fact that your particular religious practices deviate somewhat from others of your religious belief is not relevant to the substantial burden or sincerity analysis under RLUIPA or the First Amendment. I have a question, because in looking at the documents, and obviously I understand that he's pro se, he was pro se at the time, but throughout the documents, at some point, if you look at JA-8, he says that the diet does not represent his sincerely held belief of God-centered culture of Islam. And then he says there's a diet and a diet called a pescetarian. Then he goes, if you look at JA-40, he basically says my diet is vegetarianism, but I can eat fish. So I'm trying to, I guess I'm struggling with this burden, whereas, what is he alleging as his burden, because he says I can eat all vegetables, I can eat all fruit, I mean, what is this burden of, I understand he's saying he believes there's something with soy that does not agree with him, but where is the burden of he has been forced to eat soy when he's saying I'm a vegetarian, based on my religious belief? Sure. So as a consequence of his religious objection to eating meat, he receives the religious special diet and he also alleges that he can't eat soy for both religious reasons and he also alleged that it makes him ill. And then he alleges that the religious special diet primarily serves soy as its primary protein source. He alleges that it's served 95 percent of the time. He alleges that many other sources of protein on the religious special diet are not permitted to be served under that diet. So no meat, no eggs, no meat products. And so I think taking Mr. Pendleton's pro se complaint and liberally construing it, I think he is plausibly alleging that he can't receive adequate nutrition if he receives a diet that sort of has soy as the backbone of its protein for him. Well, and that was my next question. I don't, in looking at all the documents that he's attached to his complaint, because in the his complaint, I don't believe there's anything in here where he says that there's this plausible or there's a plausible claim that he is not receiving the nutritional diet that he needs. I know he's complaining of this in his attachment, but other than him saying that, I guess he believes is 1800, what is he, I mean, is there anywhere where he's saying I'm malnourished? I'm actually, I think one of the documents says he gained weight. So. You know, he has to have more than just a conclusion under 12B6 to say I am and I am not receiving because I think I'm not, I'm not. Sure, Your Honor. So, I mean, I think the court can look at all of the attachments that he attaches to his complaint. He expressly incorporates them by reference. I think the fact that he's filling out a sort of template complaint provided to him by I'm not entirely sure where, but appears to be a template complaint that doesn't have a lot of space. I think for a pro se plaintiff, you have to look at everything that's in there. And I think if you look at everything that's in there, he makes very clear that he is unable to receive adequate nutrition sort of in the in the sort of generally understood sense that the court in Welchwood said, you know, adequate nutrition isn't just a calorie count question. It goes beyond that. And here I think Mr. Pendleton is plausibly alleged that he can't eat the primary source of protein that's served under either diet. And the closest place I at least see him saying that is at J73. Could you tell me what is the what is the document that's at? So the point he says, I can't get a nutritionally adequate diet without soy. The clearest place for me, he says, that is J73. But I'm just trying to understand what J73 is. So he attached a document to his original complaint. It was, I believe, mailed to the court along with his complaint, the documentation of his medical visits, an affidavit from Mr. Pendleton and then this document, which he called a memorandum of law and support. But that contains a series of factual allegations as well. And so I think the court consider both of those. And this court has in prior cases considered entire claims that were made only in documents that did not purport to be complaints, but that were sent to the court alongside them. So, again, I think treating Mr. Pendleton properly as having been pro se below the court can consider the facts that are in there. I do think, Your Honor, there are clear allegations that he can't receive adequate nutrition based on these diets that are not in the memorandum of law. So at J55, he says, quote, I am forced to choose between violating a religious precept or depriving myself of adequate nutrition. And then at J51 and 52, he alleges that there are no alternative means. And I think the fact that Pendleton alleges that he does sometimes eat meat, does sometimes eat soy, reinforces the fact that he can't get adequate nutrition otherwise. And I think goes to Judge Benjamin's question about, well, what about the fact that he has gained weight or that he's not malnourished? I mean, religious liberty plaintiffs in this context are not required to starve themselves to preserve their claims. This court has made very clear that the standard is whether they face a coercive choice. I think in this context, on these allegations, Mr. Pendleton has alleged that he sometimes eats foods that he plausibly alleges violate his religious beliefs and that on top of that, cause him severe gastrointestinal distress. And I think the reasonable inference is that if Mr. Pendleton were to eat those foods, he would, but he can't. I want to ask you on that, this may be several levels past the court's dismissal of 12B6, but what is the exact accommodation your client seeks? Sure. So with respect to his RLUPA and his First Amendment claims, which are the only ones that were pressed on appeal, all he asks is for a diet that is consistent with his religious beliefs and that provides him with adequate nutrition. And so, you know, the defendants may have their own view about how best to accommodate Mr. Pendleton. He alleges that there are two ways that that could be done without putting any kind of burden on them. So the first is defendants concede that they provide a no soy, no meat diet to individuals incarcerated at the prison if they get a medical diet order. And Mr. Pendleton alleges that there are currently individuals receiving that diet. Mr. Pendleton also alleges that there are ways that the regular tray diet could be But I want to be clear that his allegations that that could be modified to provide adequate nutrition do not undercut the assertion that the regular tray can't currently provide him with adequate nutrition because he says that substitutions would need to be made at every meal. So, again, all signs point to Mr. Pendleton being unable to meet his dietary needs under either of the two diets provided by the prison. And I think just to respond to what I think is one of the government's main arguments, and I just want to see if you agree with this. You agree that he sort of first, it seems to me, and look, it's a pro se plan if I totally get that, like to the extent he is saying, I want a diet that contains fish but does not contain meat or soy. The answer is, I'm terribly sorry, I have no right to the diet that you want. Right. On a first amendment and rule of the basis. No, he doesn't have that. He has a right to a diet that provides him with adequate nutrition, but no sort of affirmative religious dietary restrictions. He doesn't have a right to be provided certain kinds of foods. I mean, a caveat for cases where somebody might be alleging that they are religiously required some kind of food. That's not this case. And I think that I think I mean, but I but I think that's sort of the argument here is he's he's saying, well, I'm required to have fish because I can't have I can't have meat. Right. So I'm required to have fish. And I'm not even sure that that is what he is alleging is his belief. He I mean, that was my initial question. He's saying at some point that the belief is vegetarianism. Right. That it promotes compassion, harmlessness to living creatures. And then he but then he says, but I guess I can do a pescatarian diet. So I can't I can't I'm struggling here with because it's because he can eat vegetables. He can eat fruit. Vegetables and I mean, vegetables have protein, right? Your Honor, I think it's so he but then he says, but I want a pescatarian. It is what it sounds like. So Mr. Pendleton has somewhat unusual religious beliefs and which fish he can eat depends on how many pounds the fish are. I believe he can't eat fish over 50 pounds and can eat fish that are under 50 pounds. I confess, I don't know what the basis is for that. And I don't know whether that might be causing some of the confusion about what vegetarianism versus pescatarianism is doing in his religious practice. But I think what's clear is that he does allege that he cannot get sufficient nutrition solely on the vegetables and fruits that are available in the prison meal line. Because Mr. Pendleton, one, is not currently being served those insufficient quantities because the diet he's being given is based on somebody who doesn't have any dietary restrictions. So he's essentially would be like side dishes of vegetables. And two, I think the Welch case, which we cite in our briefs and which defendant site in their brief is very clear that it's not just a matter of calories that you have to look at nutritional adequacy overall. And I think it's reasonable to infer from a pro se complaint that comprehensively has so many allegations about the inadequacy here that he can't get adequate nutrition from just fruit and vegetables. And I think very few people could get adequate nutrition from just fruit and vegetables. And maybe no one can get adequate nutrition from fruit and vegetables. But I think to infer from these allegations that Mr. Pendleton could is an inference in the defendant's favor that's not appropriate at this stage. I do want to briefly talk about the commissary issue if the court would like, unless the court has further questions. I just have one just in terms of the scope of the ask. So as I understand it, the district dismisses the RLUIPA claim. Right. I guess do you agree that the district court's dismissal of the First Amendment claim and the preliminary injunction issue sort of rise or fall if it's dismissal of the RLUIPA claim? Because to some degree, the district court's resolution of the First Amendment and preliminary injunction claims both depend on its resolution of the RLUIPA claim. Right. In all senses, the district court had no substantial burden and carried that through on all of them. And for that reason, the relief we're requesting is a reversal of the district court's decision with respect to the motion to dismiss and a vacant remand for consideration of the motion to sever. And then I do, with my remaining time, just want to talk about the commissary issue because I think the district court treated that as kind of an escape hatch from the adequate nutrition. But there's significant case law from the Seventh and Fifth Circuits that clearly says that a plaintiff, particularly an indigent one, can't be expected to pay, to spend their is provided for free to everyone else. And there's no basis in this complaint to conclude that religiously compliant foods that could make up nutritional inadequacies in Mr. Pendleton's diet are available there. I see that my time has expired, so we would request that the court reverse. And you'll have some revital time as well. So, Mr. Davenport. Good morning, and may it please the court, Spencer Davenport here today for Respondent Betsy Jividen, Clarence Ryder, and Donny Eades. Prison policy requires prisoners to obtain medical evidence of a relevant food allergy to receive a therapeutic diet. To state a claim under ARLUPA, Pendleton needed to explain for this policy how getting tested for his soy allergy before receiving a soy substitute substantially burdens his religion. Does prison policy require the inmate to obtain this medical opinion? That's correct, Your Honor. What was that, Your Honor? Where is it in the record? It's not in the record, Your Honor. We did bring that up. We're dealing with the record here, right? Okay, go ahead. I was going to say that we brought that up in our Memorandum of Law at the District Court, that he would be able to receive a soy substitute if he had a soy allergy test confirm his allergy, and we're not disputing that here, that if he... I understand, but there are all kinds of, like, he might argue that he's allergic to having such a test. But in any event, all we're here on now is a motion to dismiss. 12B6 motion, right? That's correct, Your Honor. We don't include other things that you tell us that exist but aren't in the record. But I think, Your Honor, when he's talking about that he is facing a rock-in-the-hard-place scenario that RLUIPA envisions, I think when there is a readily available step available to him that if he took a soy allergy test tomorrow, he would receive the relief that he is requesting. This goes back to my question to your colleague. I understand that his particular is, eating soy causes me distress, and causing me distress is inconsistent with my religion. But I guess I don't know why that matters for purposes of his RLUIPA claim. I'm just going to ask, why isn't this literally just Holt v. Hobbs? So let me explain why I think this is just literally Holt v. Hobbs. So Holt v. Hobbs, the prison says, have a medical reason you need a beard, you can't have a beard. If you have a religious reason you need a beard, you can't have a beard. And here the prison says, if you have a medical reason you need soy, we won't give you soy. If you have a religious reason you can't have soy, we'll make you take a test before we decide whether you can have soy. Like, I really do confess, this is not playing possum. I don't understand how this is literally just Holt v. Hobbs. Sure, your honor. So I think it's partly the way that he frames his complaint. So he's not saying that he just cannot eat soy as part of his religious. He frames it as a result of a medical issue itself. But not because I have celiac's disease. He could say, fine, I don't have celiac's disease. I just feel gross when I eat soy. And my religion forbids me from eating things that make me feel gross. And I don't care whether it's celiac's or not. I don't care how extreme it is as a medical matter. So I can just totally imagine the world. Imagine he does the test that you want him to do. He does the test. The test says, you don't have celiac's disease. And he says, don't care. My religion forbids me from eating something that makes me feel gross, whether or not it meets a particular medical diagnosis. And I think in that circumstance, if he had taken a test, test comes back. He said the result of the test don't matter, because the results of the test either way are not going to change the fact. It is true that I might also have a medical reason I can't eat soy, but I have a religious reason that I can't eat soy. So it doesn't matter if I have a medical reason or not. But I think it does for Arlupa purposes in terms of how he presents his complaint. I think he said, I cannot eat soy for religious reasons. That is a substantial burden. But because he frames it as a medical issue, then the prison is asking him to take this initial step to confirm that he has an allergy. I understand your question in terms of... The question is to you, if the government disproves that there's a medical reason for this, he still has his religious reason. That hasn't disproved the religion reason, has it? So I think if he is still having symptoms that he attributes to soy that does not rise to a level of an allergy, I think that is correct that he still has a claim under Arlupa in that circumstance. But I think he isn't at that level yet. He can get a soy allergy test, and if it confirms that he would get the relief he wants. And so I don't think for Arlupa, if we're talking about a substantial pressure on his religion, if he can get the test and it will confirm the issue that he is saying that he's having, he would be able to get that. Well, as I understand it, he alleges that the soy causes him some sort of physical distress, but just soy in itself is contrary to his religious beliefs. So I don't understand how getting a test that says he's not allergic to soy deals with the religious beliefs. So I think going to the record itself and being precise about what his religious beliefs are. The record is pretty scanty. We have a pro se plaintiff and we hear on the 12b6 motion, right? That's correct. But the documents that he does attach, so it's already been mentioned in appendix page 40. He talks about how his diet aids in purification of the mind, body and the reparation of his inner self. And so then he talks about the fact that he has a soy allergy. And for that reason, the soy products which make him ill are haram. If I think going to Pendleton's reply brief itself, he talks about how religious belief is that his diet should purify the body. And because he has an intolerance to soy, that makes it so that soy is prohibited by his religion. So soy on its own terms is not prohibited by his religion. It's the fact that he has a medical consequence to that is why it's prohibited. And it's why the prison is asking for him to take this next step in terms of taking an allergy test. As your honors have alluded to, he would still possibly have a viable Arlupa claim if his soy response to it does not rise to an allergy. But we're not at this point yet. And I guess I'm going to take quasi-judicial notice of the fact that lots of people have sensitivity to soy without having celiac disease, right? Well, not celiacs for soy, but yes. So right, but there's like whether you're allergic to something and whether ingesting it occasionally causes discomfort are different things, right? Correct. And all a test could do is tell us whether he's allergic. That is correct. But I think just to put a final point on it, I think what we are saying is there is this final step available to him. If in terms of Arlupa, if we're looking at how this court has framed the issue in terms of substantial pressure, this rock and hard place that he's forced to choose, when there's this final step available to him to then see if he has a soy allergy, I think he needs to do that first before he's going to say that there is still an Arlupa claim available too. I guess, so look, it's a 12b6 of his allegations, but are you dispute, I guess, are you disputing that he has alleged, which I guess is the 12b6 standard, are you disputing that he is alleged that the prison offers a religious diet or some diet that doesn't include soy? That is correct. As in you agree that the prison does in fact offer a diet that doesn't include soy? If you were allergic to soy, correct. There are prisoners who want a diet that doesn't have soy that get diets that don't have soy, you agree? Correct. But even if this court chooses to credit Pendleton's soy-based accommodation, the district court was still right to grant the motion to dismiss because the complaint fails to adequately allege that the meal plans available to him are nutritionally deficient for him. So I think cases in the circuit, whether it's Coleman, Lovelace, or Carter, for example, they focus on the real practical consequences when a party has to choose between keeping with their faith or, you know, receiving a government benefit. She cited a whole series of other ones, but what about the one that I cited to your colleague where he says, quote, I cannot maintain an adequate diet because I'm not given a substitute protein or caloric source. I don't know how that's not sufficient. So I think, Your Honor, the main thing that we would respond to that is the attached documents that he has to his complaint show that he has maintained health, he has maintained his weight, he's actually in fact gained weight during that time. I think what this court said in Goynes is that when there are conflicting documents attached to the complaint, that the court should credit those conflicting documents over any sort of allegation. So why isn't it equally consistent with the view that under immense pressure, he has succumbed and done things that violate his religion so as to avoid being that doesn't seem like a conflict, which is, I can't do it. And although, I mean, again, I don't know the particular tenets of this gentleman's faith, but it could be my religion says that sometimes that you even can do things that would otherwise violate your religion if necessary to maintain your health or life. Why isn't it totally plausible to reconcile it that way? I think that would be a stretch for what this court infer in terms of even as a pro se complainant, he did not allege in any point that he was eating the soy to sustain him. And I just think that is too big of a stretch for this court to do in terms of whether he's been receiving adequate nutrition up to this point. To the First Amendment complaint, I think even if the court disagrees with everything I've said so far today, the court should still affirm because it failed to allege sufficient facts showing the prison policies were not reasonably related to a legitimate penological interest. What this court said in Jehovah is that pre-exercise claims are more stringent and that it's his burden to show that the policy at issue, so the requiring a soy allergy test is not reasonably related to the legitimate penological interest. And nothing in this complaint or supporting documents say that about the prison policy. In his reply brief, the closest thing he comes is that he says that there is a no soy diet available to prisoners who have a soy allergy test, but that equally applies to him. In this case, he is not at the point where he has exhausted his options in terms of confirming that test. And so I think consistent with that policy, there is no inconsistency in between a secular and a religious policy in that regard. The case upon which you're relying, is it also a motion to dismiss? Or was there a motion for summary judgment? Jehovah was a motion for summary judgment, but within the case itself, it said that the prisoner has the burden of establishing both the burden element as well as the rationally related to a logical interest. So I will confess that I don't necessarily understand the connection between the RLUIPA and First Amendment claim. And I have this general sense that now that RLUIPA exists, courts tend to just like skate over First Amendment claims in ways that might be wrong. But I went back and I pulled up the district court set. So I guess this is all a preface to saying it actually strikes me as entirely possible that you should win this First Amendment claim. But when I look at what the district court says, this is JA 100 to 101 carryover. So far as I can see, this is literally what the district court says about why this is the First Amendment claim. Consistent with the above findings concerning the failures of the RLUIPA claim, I find the First Amendment claim also fails. Now, that to me might be wrong because I might think there's a different legal standard for the RLUIPA and First Amendment claims. But do you agree? Do you agree as a descriptive matter that district court says because I've rejected the RLUIPA claim, I also reject the First Amendment claim? I agree, Your Honor. The district court largely relied on the RLUIPA analysis in terms of the substantial the First Amendment claims. But what this court has said previously in United States v. Smith is that this court can affirm on any ground that's apparent in the record. And so the fact that he has to make out the second element of the claim, I mentioned that he does kind of a flyby analysis in his briefs here. So he recognizes that he needed to make that argument. So this court could look to see and see the fact that he hasn't raised that issue, that it is proper to affirm on that ground. I think finally, in terms of the motion to sever, which the district court interpreted for injunctive relief, this court could still affirm that basis. As Your Honors were recognizing, he's kind of shifting in terms of what he's wanting. So his motion to sever itself, he was requesting to be placed on a pescatarian diet to have fish. He also wanted to have tomatoes and onions, which are not a part of the religious special diet at the prison. And as Pendleton's counsel has conceded today that that relief is just not available to him at most, what he would be receiving is a soy substitute while still maintaining on the religious special diet and all other aspects. So can you help me understand what motion to sever means here? So he styled it as a motion to sever. So he just wanted to be apart from the religious diet that he is a part of. Okay. That's what I thought. And I thought, well, there's some magic here. No. So if there aren't any other questions, this court should affirm the district court. Thank you. Thank you, Mr. Davenport. Ms. White, you have some rebuttal time. Thank you, Your Honor. So with my rebuttal time, I want to point out first that the defendants concede that even if the plaintiff failed a soy allergy test, he would still have both RLUIPA and First Amendment claims. That proves the fact that they're testing. There's no relationship to Mr. Pendleton's religious belief or his ability to assert those claims and instead just sort of stands as some hoop that he has to go through that is not at all related to the sort of religious interest that he's asserting and, in fact, would provide the defendants some sort of legitimate basis to decide the threshold at which Mr. Pendleton's soy allergy violates his religious beliefs about purification of the body. And that's just entirely inconsistent with case law considering the way that courts should treat a plaintiff's religious beliefs and sort of what constitutes their sincerity and validity. So I think the testing piece as a legal matter is just not permissible as a sort of hoop for him to jump through. But even if it were, I don't think there's any basis to infer from the complaint that Mr. Pendleton has refused or failed to seek this. In fact, on at least four occasions, Mr. Pendleton requested a medical diet order. That's at JA 27, 31, 32, and 34. And he alleges that people in the sort of medical staff at the prison often counseled him to forego his religious beliefs with respect to meat as a way to address his medical issues with respect to soy. I think that just sort of shows the fact that the defendants here were simply not interested in accommodating Mr. Pendleton's religious beliefs for whatever reason. And so they can't now say that the thing he should do is the thing that he has done on four occasions, which is go seek medical treatment, medical diet, you know, treatment, a diet order for his soy intolerance. He did that. He was refused. He has also contemporaneously and consistent with his religious beliefs sought medical accommodation for that and been denied. And then in terms of their First Amendment argument about that, Mr. Pendleton hasn't adequately alleged that this fails to relate to a legitimate penological interest. I think here, too, they're way beyond the complaint. Mr. Pendleton alleges that other individuals in the prison receive exactly the diet that he seeks. And if you look at the way the Supreme Court and Turner handled prison assertions of cost, administrative burden, et cetera, the Supreme Court doesn't just credit and courts aren't supposed to just credit, let alone in a motion to dismiss the government's assertion that there might be some effect on prison governance and prison administration. They have to actually look, is that substantiated? Is that true? And here on a motion to dismiss for the plaintiff alleges you do this for other people. I just don't see how the Supreme Court, how the Supreme Court, this court or other courts accountants and approach where the government's assertion in their brief in response to a is what precludes a plaintiff's ability to plead First Amendment claim on that basis. I also want to clean up any sort of confusion about this, the way that the RLUIPA and the First Amendment standards relate. The substantial burden analysis is the same in this court in the circuit under both RLUIPA and the First Amendment. So to the extent they argue in their brief that perhaps it's a higher substantial burden standard for the First Amendment claim, that's just not consistent with this court's precedence. Mr. Pendleton does have to make additional show and additional allegations with respect to the second step of the First Amendment claim that he doesn't have to do with respect to his RLUIPA claim. So I just want to clean that up. And then on the motion to sever, it's true that Mr. Pendleton sought to be severed from the religious special diet and to have his pescatarian dietary practices established in his motion to sever. But he brought that based on all of the claims that he pursued below, which went well beyond the First Amendment and RLUIPA claims. And so I think the district court, if the court vacated and remanded, could easily sort of decide the relief that he should seek now based on these claims is much narrower. So unless the court has further questions, I think we'll rest on our brief and request reversal of the denial or reversal of the grant of the motion to dismiss and vacater and remand of the denial of the motion to sever. Thank you very much. Judge Motz, do you have any questions? I do not. Thank you. Okay. Thanks very much. The case is submitted. We will come down Greek Council and then recess court for the day.
judges: Toby J. Heytens, DeAndrea Gist Benjamin, Diana Gribbon Motz